**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3840
_____

YUE JIANG,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A079-190-730)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 9, 2010

Before: AMBRO, CHAGARES and ALDISERT, Circuit Judges

(Opinion filed: June 24, 2010)
_____

OPINION
_____

PER CURIAM

Yue Jiang, a citizen of China, petitions for review of a Board of Immigration

Appeals ("BIA") decision which upheld in part the Immigration Judge's ("IJ") order denying his application for asylum and related relief. For the reasons that follow, we will deny the petition.

I

Jiang entered the United States in 2005 without inspection. He received a Notice to Appear and, before the IJ, conceded removability and sought asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Jiang sought asylum based on persecution that he alleged he endured for opposing China's family planning policies. At the merits hearing, Jiang testified that he was romantically involved with a woman – Jin Yu – in China and that they were married in a traditional wedding ceremony in 2004. However, their marriage was never officially registered because he had not yet reached the legal age.

In March 2004, Jin Yu discovered she was pregnant and the couple went into hiding. Jiang testified that several months later, family planning officials came to the home where they were hiding. Jin Yu's unauthorized pregnancy was discovered, and the officials took her into custody for an abortion. Jiang stated that he tried to stop the officials and help Jin Yu break free and, in the struggle, knocked one of the officials to the ground, injuring him. The other officials arrested Jiang and took Jin Yu to a hospital to terminate the pregnancy. Jiang was detained for three to five days. He testified that nothing happened to him while he was in jail.

After a few days, Jiang's parents visited him and informed him that Jin Yu had been subjected to an abortion. They then paid ¥5000 RMB to a prison guard who helped Jiang escape during a shift change. Jiang stated that he then met his uncle, who gave him money, and he fled to Fuzhou City. He subsequently escaped to the United States.

The IJ denied relief, reasoning that Jiang was incredible and that, notwithstanding the adverse credibility determination, he failed to meet his burden of proof. The BIA rejected the adverse credibility finding, but agreed with the IJ that Jiang failed to demonstrate his eligibility for asylum. Jiang then filed a petition for review.

II

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We review agency factual determinations for substantial evidence, and will uphold a factual determination "unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005) (internal citations omitted).

In denying relief, the BIA reasoned that Jiang failed to meet his burden of demonstrating either past persecution or a well-founded fear of future persecution. Jiang argues that, in assessing whether he suffered persecution, the Board erred in failing to

3

consider the psychological harm he endured because of Jin Yu's forced abortion. In his counseled brief, he quotes Shi Liang Lin v. United States Department of Justice, 494 F.3d 296, 313 (2d Cir. 2007) (en banc), for the proposition that "[t]he fact that someone's spouse has been subjected to a forced abortion or sterilization would not be irrelevant to such an analysis, it simply could not provide for asylum status *per se*." However, Jiang's argument takes this statement completely out of context. The "analysis" in question concerned a situation in which an asylum applicant did not directly oppose coercive family planning policies, so as to qualify for asylum, and had to demonstrate that his spouse's resistance to such policies had been imputed to him. See id.; see also Lin-Zheng v. Att'y Gen., 557 F.3d 147, 157 (3d Cir. 2009) (en banc) (adopting Shi Liang Lin and holding that spouses of individuals subject to coercive population control policies must demonstrate their own persecution).

More fundamentally, we do not think the Board erred in this respect, as Jiang submitted no evidence – testimonial or otherwise – about his mental state following the abortion.

Nor are we compelled to disagree with the Board's conclusion that Jiang's detention did not amount to persecution. "To establish eligibility for asylum based on past persecution, an applicant must show: (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of [resistance to a coercive population control program]; and (3) is committed by the government or forces the government is either unable or unwilling to control." Myat Thu v. Att'y Gen., 510 F.3d 405, 413 (3d Cir.

4

2007) (internal citations and quotation marks omitted). Persecution is limited to "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life and freedom." Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). Thus, to qualify as persecution, conduct must be extreme. See id. at 1243. It does not include "all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." Id. at 1240. Here, the BIA reasoned that Jiang's detention, which lasted five days at most, and during which he suffered no mistreatment, did not rise to the level of persecution. Jiang offers no good reason to question that assessment.

Nor has Jiang demonstrated that the BIA erred in holding that he lacked a well-founded fear of future persecution. To demonstrate eligibility for asylum based on a fear of future persecution, an applicant must demonstrate that he "has a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003). To satisfy the objective prong, a petitioner must show that he would be individually singled out for persecution or demonstrate a pattern or practice of persecution of similarly situated individuals. Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). Here, the BIA reasoned that Jiang failed to demonstrate that he would be singled out for persecution based on either his opposition to China's family planning policies or his illegal exit from that country.

With regard to Jiang's fear based on his resistance to the family planning laws,

5

Jiang argued that because he opposed the law and injured a family planning official, he would likely be singled out for persecution. The BIA reasoned, without further elaboration, that "[Jiang] has not established a well-founded fear that he will be persecuted upon his return to China because he had opposed the laws governing marriage and population control." AR 4. In his brief, Jiang argues that the BIA erred by failing to discuss the basis for its conclusion, and he cites statements from his own testimony and affidavit in support of his claim that he would be singled out for persecution. Specifically, he stated that the official he knocked down swore revenge against him and that other officials were angry about his escape and wanted to arrest him. Although the Board's statement is vague, we understand it to mean (1) Jiang's allegations do not amount to persecution, and/or (2) there was insufficient evidence in the record to support his allegations. Because we conclude that both of these interpretations are supported by the record, we see no error in the BIA's decision.

First, Jiang does not sufficiently allege that he would suffer persecution if returned to China. He testified that he fears Chinese authorities will arrest him because he escaped from prison and because the guard he knocked down swore he "would not [let him] live another good day if he could get [Jiang]." AR 382. While these threats are certainly troubling, there is no evidence in the record to suggest that officials are in any way motivated to harm Jiang based on a protected ground – i.e., his resistance to China's family planning policy. Indeed, Jiang has not shown that officials would seek him out for

6

any reason other than his assault on a government official and subsequent escape from jail.

Second, even if Jiang had sufficiently alleged that he would suffer persecution, there is no evidence in the record, save for speculative statements made by him and Jin Yu, <u>see</u> AR 356, 382, that Jiang would suffer any mistreatment at the hands of government officials. Without more, we are not compelled to disagree with the Board's conclusion.

As to Jiang's fear that he will be singled out for persecution because he left China illegally, the BIA reasoned that the background evidence Jiang submitted did not establish that first time offenders who depart the country illegally are abused in any way upon their return. Jiang does not contest that conclusion in his brief.

Because Jiang did not carry his burden of proof for asylum, we also agree that he was unable to meet the higher standard applicable to applications for withholding of removal. <u>See</u> <u>Sioe Tjen Wong v. Att'y Gen.</u>, 539 F.3d 225, 236-37 (3d Cir. 2008). Nor did he demonstrate eligibility for CAT protection. <u>See</u> <u>Kamara v. Att'y Gen.</u>, 420 F.3d 202, 212-13 (3d Cir. 2005).

Accordingly, we will deny the petition for review.